SEYFARTH SHAW LLP
Michele J. Beilke (SBN 194098)
mbeilke@seyfarth.com
Julia Y. Trankiem (SBN 228666)
jtrankiem@seyfarth.com
Sage E. Fishelman (SBN 339529)
sfishelman@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, CA 90017-5793
Telephone:   (213) 270-9600
Facsimile:   (213) 270-9601

Attorneys for Defendant
ABBOTT LABORATORIES

ADVANTAGE ADVOCATES, P.C.
Amy S. Ramsey (SBN 315981)
aramsey@advantage-law.com
21 Miller Alley
Pasadena, CA 91103
Telephone:   (626) 310-0100
Facsimile:   (626) 314-5101

Attorney for Plaintiff
TROY EASTER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY EASTER,<br><br>                      Plaintiff,<br><br>          v.<br><br>ABBOTT LABORATORIES (an Illinois corporation) and DOES 1 through 25, inclusive,<br><br>                      Defendants. | Case No. 2:26-cv-02998-JLS-AS<br><br>**JOINT RULE 26(F) REPORT**<br><br><br><br>Complaint Filed: February 13, 2026<br>Removal Filed:   March 20, 2026<br>Trial Date:        None Set |

326242857v.3

Plaintiff Troy Easter ("Plaintiff") and Defendant Abbott Laboratories ("Defendant" or "Abbott") (collectively, the "Parties"), by and through their counsel of record, submit this Joint Rule 26(f) Report pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 26-1, and the Court's Order Setting Scheduling Conference dated March 26, 2026.

On June 5, 2026, counsel for Plaintiff, Amy S. Ramsey, and counsel for Abbott, Sage E. Fishelman, met by Zoom teleconference and considered and discussed the following matters required by Rule 26(f) and local Rule 26-1. The position of each party is below.

## A.    STATEMENT OF THE CASE

### 1.    Plaintiff:

Troy Easter is an African-American male with more than a decade of experience in the pharmaceutical and medical device industries. He accepted employment with Abbott Laboratories as a Clinical Sales Specialist ("CSS") in the Structural Prevention Division in May 2023, with the understanding that the CSS position would serve as a stepping stone to a Territory Manager ("TM") role—an opportunity presented to him by his then-TM, Kevin Knutson.

As a CSS, Plaintiff promoted and supported advanced medical devices, including the Amulet device for stroke prevention and the PFO device, working in the field at hospital settings throughout Los Angeles County. Plaintiff quickly distinguished himself as a top performer, becoming the only CSS in his region to meet or exceed sales quotas and the only territory out of nine to achieve its plan during the relevant period. Plaintiff also performed many of the duties of a TM in addition to his CSS responsibilities and was the only CSS or TM capable of serving as a technical expert during procedures.

Despite his exceptional performance and qualifications, Abbott denied Plaintiff promotion to the TM position on two separate occasions, awarding the positions to less qualified candidates who were either white, female, or both. The first TM position was awarded to Scott Leslie, a white male from a different division who lacked the specialized clinical expertise Plaintiff possessed. The second TM position was awarded to

JOINT RULE 26(F) REPORT

326242857v.3

Kristin Szilagyi, a white female with no prior experience in the left atrial appendage closure field and who had not been involved in the cardiology field for several years.

The discriminatory pattern at Abbott was not limited to Plaintiff's experience. Since the appointment of Azita Bayat as Area Vice President of the Structural Intervention Division, the majority of managerial hires have been women, and Ms. Bayat admitted that it was her goal to hire only women. Abbott also failed to take meaningful corrective action in response to Plaintiff's internal complaints and deleted emails and other records related to his promotion applications, including thank-you notes and physician letters of recommendation submitted on his behalf.

Abbott's conduct made Plaintiff's working conditions so intolerable that he was compelled to resign in November 2024. Plaintiff brings claims for race and gender discrimination, failure to prevent discrimination, wrongful termination/constructive discharge, and violation of the California Equal Pay Act.

**2.    Defendant:**

Abbott Laboratories is a global medical technology and pharmaceutical manufacturer. Plaintiff worked as a Clinical Sales Specialist ("CSS") from May 1, 2023, to November 6, 2024. As a CSS, he provided clinical and sales support through education of current and potential customers and procedure coverage within a defined region. The CSS role is materially distinct in scope, skill, effort, responsibility, and accountability from the Territory Manager ("TM") position. The CSS and TM roles are not "substantially similar work," and Abbott's compensation structure reflects bona fide, job-related factors other than race or sex, including job classification, market data, experience, scope of accountability, business ownership, and performance.

Abbott had legitimate, non-discriminatory, non-retaliatory business reasons for each challenged employment decision, including the selection of the successful candidates for the two TM openings referenced in the Complaint. The selections were based on qualifications, interview performance, business plans, customer/physician relationships, and fit for the role. Plaintiff was not constructively discharged; Abbott did

3

JOINT RULE 26(F) REPORT

not create or knowingly permit intolerable working conditions, and Plaintiff voluntarily resigned. Abbott denies any pattern or practice of discrimination, denies the alleged statements attributed to management, denies any pretext, and denies that Plaintiff suffered any adverse employment action because of his race or sex.

Abbott further denies that Plaintiff is entitled to any of the remedies sought, including back pay, front pay, emotional distress damages, punitive damages, attorneys' fees, liquidated damages, or interest. Abbott reserves all defenses, including but not limited to: failure to state a claim; legitimate, non-discriminatory reasons; bona fide factors other than sex/race under Labor Code § 1197.5(a)(1); failure to mitigate; after-acquired evidence; avoidable consequences doctrine; failure to exhaust administrative remedies; statute of limitations; offset; managerial privilege; good-faith compliance; lack of malice, oppression, or fraud; and unconstitutionality of any punitive damages award.

**B.    LEGAL ISSUES**

The key legal issues include, but are not limited to:

1.    Whether Plaintiff can establish a prima facie case of race or gender discrimination under FEHA and, if so, whether Abbott had legitimate, non-discriminatory reasons for its employment decisions that Plaintiff cannot show to be pretextual;

2.    Whether the CSS and TM positions constitute "substantially similar work" within the meaning of Labor Code § 1197.5;

3.    Whether any wage differential is justified by one or more bona fide factors other than sex or race, including a seniority system, merit system, a system that measures earnings by quantity or quality of production, or other bona fide factors such as education, training, or experience under Labor Code § 1197.5(a)(1)(A)–(D);

4.    Whether Plaintiff was subjected to working conditions so intolerable that a reasonable person would have felt compelled to resign (constructive discharge under *Turner v. Anheuser-Busch*);

5.    Whether Abbott took all reasonable steps necessary to prevent discrimination and harassment from occurring;

JOINT RULE 26(F) REPORT

326242857v.3

6.     Whether Plaintiff timely and properly exhausted his administrative remedies as to each claim and each alleged adverse action;

7.     Whether Plaintiff has mitigated his alleged damages and whether any recovery is limited by avoidable consequences or offset;

8.     Whether Plaintiff can establish entitlement to punitive damages by clear and convincing evidence under Civil Code § 3294, including the involvement of an officer, director, or managing agent;

9.     Whether Plaintiff's claims are barred or limited by the after-acquired evidence doctrine; and

10.    The proper measure, if any, of damages.

**C.     DAMAGES**

**1.     Plaintiff:**

Plaintiff seeks all available remedies under the FEHA and the California Equal Pay Act, including: back pay representing lost earnings and employment benefits from the date of constructive discharge; front pay or reinstatement in lieu thereof; compensatory damages for economic losses, including the substantial wage differential between the CSS and TM positions—Plaintiff earned approximately $200,000 annually as a CSS, while TM base salaries start at $350,000 and total compensation can exceed $600,000; compensatory damages for emotional distress, humiliation, and mental and physical pain and anguish; liquidated damages under Labor Code § 1197.5(h) equal to the unpaid wage differential, plus interest; punitive damages under Civil Code § 3294 on the grounds that Defendants' conduct was committed by officers and managing agents with malice, fraud, and oppression; and reasonable attorneys' fees and costs, including expert costs, pursuant to Government Code § 12965(c)(6) and Labor Code § 1197.5(h).

Plaintiff's damages continue to accrue and will be established by proof at trial. Plaintiff reserves the right to supplement this disclosure as discovery progresses.

**2.     Defendant:**

JOINT RULE 26(F) REPORT

326242857v.3

Defendant denies that Plaintiff is entitled to any damages or relief whatsoever. Plaintiff was paid all wages owed for the work he actually performed in the CSS role and is not entitled to the differential between CSS and TM compensation because those are not substantially similar positions. Any alleged emotional distress damages are speculative, unsupported, and/or attributable to alternate stressors unrelated to Abbott. Punitive damages are unavailable as a matter of law and fact, and any award would be unconstitutional. Front pay is unavailable because Plaintiff voluntarily resigned and has had ample opportunity to mitigate. Defendant reserves the right to assert all applicable offsets, including but not limited to mitigation earnings, unemployment benefits where permitted, and amounts barred under the after-acquired evidence doctrine.

**D.    INSURANCE:**

There is no insurance coverage applicable to this matter.

**E.    MOTIONS:**

**1.    Plaintiff:**

Plaintiff also intends to file a First Amended Complaint to add St. Jude Medical, S.C., Inc. as a defendant, as Abbott's own Corporate Disclosure Statement and Notice of Interested Parties identifies St. Jude Medical, S.C., Inc. as Plaintiff's employing entity. Defendant has agreed to this amendment, and Plaintiff will file a stipulation and proposed order forthwith. Abbott's Corporate Disclosure Statement and Notice of Interested Parties also identifies St. Jude Medical, LLC as an interested party and the and the parent company of St. Jude Medical, S.C., Inc. Plaintiff has propounded discovery regarding the involvement, if any, of St. Jude Medical, LLC with his employment and the matters alleged in this lawsuit. Plaintiff will seek leave of Court to further amend the complaint on or before the deadline set forth herein if supported by the information obtained during discovery.

**2.    Defendant:**

Defendant does not currently intend to file motions to add parties, transfer venue, or challenge jurisdiction. Defendant reserves the right to seek leave to amend its

6

JOINT RULE 26(F) REPORT

pleadings and to file a motion for judgment on the pleadings as discovery develops. To the extent Plaintiff seeks to amend his Complaint to add St. Jude Medical, S.C., Inc. and/or later seeks leave to add St. Jude Medical, LLC, Defendant reserves all defenses and objections, including as to employer status, exhaustion, joinder, timeliness, statute of limitations, and whether any amendment relates back under Rule 15 or otherwise. Defendant intends to file a single motion for summary judgment, or in the alternative, partial summary judgment, on each cause of action and on Plaintiff's prayer for punitive damages.

**F.    COMPLEXITY:**

The Parties agree that this case is not complex and that the procedures of the Manual for Complex Litigation should not be utilized.

**G.    STATUS OF DISCOVERY:**

The Parties each have propounded written discovery. They will exchange Rule 26(a)(1) initial disclosures within 14 days after the Scheduling Conference.

**H.    DISCOVERY PLAN:**

**1. Initial Disclosures:** The Parties will exchange Rule 26(a)(1) initial disclosures within 14 days after the Scheduling Conference.

**2. Subjects of Discovery:**

*Plaintiff anticipates* discovery into: Abbott's hiring and promotion practices and decisions in the Structural Prevention Division, including the selection processes for the two TM openings referenced in the Complaint; the qualifications and selection criteria applied to Plaintiff, Scott Leslie, and Kristin Szilagyi for the TM positions; the compensation structure for CSS and TM employees, including all components of total compensation; the deletion of emails, letters of recommendation, and other records related to Plaintiff's promotion applications; the hiring and promotion practices under Area Vice President Azita Bayat, including the composition of managerial hires during her tenure; communications between and among Abbott management regarding Plaintiff's performance, applications, and departure; Abbott's policies and procedures regarding

JOINT RULE 26(F) REPORT

326242857v.3

discrimination prevention, complaint investigation, and corrective action; the corporate structure and employment relationships among Abbott Laboratories, St. Jude Medical, S.C., Inc., and St. Jude Medical, LLC; and any comparator compensation data for CSS and TM employees. Plaintiff intends to depose key decision-makers, including Ms. Bayat, and any individuals involved in the TM selection processes.

*Defendant anticipates* extensive discovery into: Plaintiff's allegations and the factual bases for each cause of action; Plaintiff's qualifications, performance, and conduct during his employment; the circumstances of Plaintiff's resignation; Plaintiff's job search, post-Abbott employment, and mitigation efforts; Plaintiff's claimed economic and emotional distress damages, including all alternate stressors; Plaintiff's medical, mental-health, and psychological treatment to the extent placed at issue; Plaintiff's prior and subsequent employment history (including third-party discovery to prior and subsequent employers); communications with co-workers, recruiters, and third parties regarding the matters alleged; and any after-acquired evidence. Defendant intends to depose Plaintiff and any treating providers, comparators, and third-party witnesses identified through discovery.

**3. Phasing:** Defendant proposes that discovery proceed without phasing, except that expert discovery shall follow the close of fact discovery.

**4. Electronically Stored Information (ESI):** The Parties agree to preserve relevant ESI. ESI will be produced in industry-standard formats (Bates-stamped, single-page TIFF with load files and extracted text/OCR, or searchable PDF where appropriate), with native production reserved for spreadsheets, presentations, and other file types where native form is necessary. The Parties will meet and confer regarding custodians, date ranges, search terms, and de-duplication protocols. Given the breadth of Plaintiff's allegations regarding division-wide hiring patterns, Defendant will propose reasonable, proportional limitations on custodians and search terms consistent with Rule 26(b)(1).

**5. Privilege and Trial-Preparation Materials:** The Parties will request entry of a stipulated protective order based on the Central District's Model Protective Order, given

JOINT RULE 26(F) REPORT

326242857v.3

the anticipated production of sensitive personnel files, confidential business information, compensation data of non-party employees, and proprietary information regarding Abbott's medical-device business. The Parties further agree to a Rule 502(d) clawback provision providing that the inadvertent production of privileged or work-product material shall not constitute a waiver.

**6. Discovery Limitations:** The Parties intend to adhere to the discovery limits set forth in the Federal Rules and Local Rules. Given Plaintiff's broad pattern-and-practice allegations, Defendant reserves the right to seek protective orders limiting the scope of discovery as to non-party employees and to oppose any request by Plaintiff to expand the presumptive limits on depositions or interrogatories. The Parties agree to meet and confer in good faith before raising any discovery dispute with the Court.

**7. Fact and Expert Discovery Cut-Offs:** *See* Exhibit A.

## I.   DISPOSITIVE MOTIONS:

### A.   Plaintiff:

Plaintiff does not currently anticipate filing a motion for summary judgment but reserves the right to seek partial summary judgment on discrete issues as discovery develops. Plaintiff will respond to any motion for summary judgment filed by Defendant.

### B.   Defendant:

Defendant intends to file a motion for summary judgment, or, in the alternative, partial summary judgment, on all causes of action and on Plaintiff's prayer for punitive damages. Defendant anticipates that the following issues, among others, are amenable to disposition by summary judgment: (1) whether Plaintiff can establish pretext as to the legitimate, non-discriminatory reasons for the two TM selections; (2) whether the CSS and TM positions are "substantially similar" under Labor Code § 1197.5; (3) whether Plaintiff's working conditions were objectively "intolerable" under the Turner constructive discharge standard; (4) whether Plaintiff exhausted administrative remedies as to each adverse action; and (5) whether the record supports punitive damages by clear and convincing evidence.

JOINT RULE 26(F) REPORT

326242857v.3

**J.    ALTERNATIVE DISPUTE RESOLUTION (ADR) PROCEDURE SELECTION:**

The Parties are willing to use a neutral from the Court Mediation Panel.

**K.    SETTLEMENT EFFORTS:**

The Parties have not engaged in substantive settlement discussions. No demand has been made by Plaintiff. Defendant will respond as appropriate if and when a demand is received.

**L.    PRELIMINARY TRIAL ESTIMATE:**

**A.    Plaintiff:**

Plaintiff estimates trial will last approximately 5–7 court days, including jury selection, and anticipates calling approximately 5-8 witnesses in his case-in-chief, including Plaintiff, comparator witnesses, physician witnesses who provided letters of recommendation, and expert witnesses on damages and, as appropriate, on industry compensation standards. Trial will be by jury.

**B.    Defendant:**

Defendant estimates trial will last approximately 3-4 court days, exclusive of jury selection, and anticipates calling approximately 3-5 witnesses in its case-in-chief, exclusive of Plaintiff. Trial will be by jury.

**M.    TRIAL COUNSEL:**

**A.    Plaintiff:**

Amy S. Ramsey, Advantage Advocates, P.C.

**B.    Defendant:**

Michele J. Beilke, Julia Y. Trankiem, Sage Fishelman, Seyfarth Shaw LLP.

**N.    INDEPENDENT EXPERT OR MASTER:**

The Parties do not believe that the appointment of a master under Rule 53 or an independent scientific expert is necessary or appropriate at this time.

JOINT RULE 26(F) REPORT

326242857v.3

**O.    OTHER ISSUES:**

The Parties do not believe there are any unique issues affecting the status or management of the case.

DATED: June 12, 2026                    Respectfully submitted,

ADVANTAGE ADVOCATES, P.C.


By: /s/ *Amy S. Ramsey*
    Amy S. Ramsey

Attorneys for Plaintiff
TROY EASTER


DATED: June 12, 2026                    Respectfully submitted,

SEYFARTH SHAW LLP



By: _____
Michele J. Beilke
Julia Y. Trankiem
Sage E. Fishelman
Attorneys for Defendant
ABBOTT LABORATORIES


*Pursuant to Central District Local Rule 5-4.3.4(a)(2), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

JOINT RULE 26(F) REPORT

326242857v.3

## EXHIBIT A

| DESCRIPTION | PROPOSED DISCOVERY SCHEDULE |
|---|---|
| Last Day to File Motions to Add Parties and Amend Pleadings | August 21, 2026 |
| Fact Discovery Cut-Off | March 26, 2027 |
| Last Day to Serve Initial Expert Reports | April 9, 2027 |
| Last Day to File Motions (except Daubert and MILs) | April 9, 2027 |
| Last Day to Serve Rebuttal Expert Reports | May 7, 2027 |
| Last Day to Conduct Settlement Proceedings | May 28, 2027 |
| Expert Discovery Cut-Off | June 4, 2027 |
| Last Day to File Daubert Motions | June 11, 2027 |
| Last Day to File Motions in Limine | July 30, 2027 |
| Final Pre-Trial Conference (Friday, 10:30 a.m.) | August 27, 2027 |

326242857v.3