Amy S. Ramsey (SBN 315981)
ADVANTAGE ADVOCATES, P.C.
21 Miller Alley
Pasadena, CA 91103
(626) 310-0100 (Tel)
(626) 314-5101 (Fax)
aramsey@advantage-law.com

Attorney for Plaintiff
Troy Easter

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY EASTER ,<br><br>Plaintiff,<br><br>vs<br><br>ABBOTT LABORATORIES (an Illinois corporation), ST. JUDE MEDICAL S.C., INC (a Minnesota corporation), and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:26-cv-02998-JLS (ASx)<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. Discrimination on the Basis of Race and Gender (Cal. Gov't Code § 12940(a))<br>2. Failure to Prevent, Investigate, and Remedy Discrimination and/or Harassment (Cal. Gov't Code § 12940(k))<br>3. Wrongful Termination/Constructive Discharge<br>4. Violation of Equal Pay Act (Cal. Lab. Code § 1195.5(a)) |

Plaintiff Troy Easter (hereinafter "Plaintiff") brings this action against Abbott Laboratories (hereinafter "Abbott"), and St. Jude Medical S.C., Inc. (hereinafter "SJM") , and/or DOES 1 through 25, inclusive. Abbott, SJM, and DOES 1 through 25 are hereinafter collectively referred to as "Defendants." Plaintiff complains and alleges as follows on the basis of personal knowledge and/or information and belief.

1

FIRST AMENDED COMPLAINT

## THE PARTIES

1.    At all times relevant to this action, Plaintiff resided in Los Angeles County, California.

2.    Abbott is a medical technology and pharmaceutical manufacturer.

3.    Plaintiff is informed and believes and on that basis alleges that Abbott is a corporation organized and existing under the laws of Illinois with its principal place of business at 100 Abbott Park Road, Abbott Park, mentioned Illinois 60064.

4.    Abbott Laboratories is, and was at all times in this complaint, authorized to conduct business in California. Abbott's place of business, where the below-described incidents took place, is in Los Angeles County.

5.    Plaintiff is informed and believes, and on that basis alleges, that SJM is a corporation organized and existing under the laws of Minnesota, with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064 (the same as Abbott). SJM is, and was at all times mentioned in this complaint, authorized to conduct business in California and regularly conducts business in Los Angeles County.

6.    Plaintiff worked for Defendants as a Clinical Sales Specialist in the Structural Prevention Division in Los Angeles County, in the field, from May 2023 through approximately November 15, 2024.

7.    As reflected in Abbott Laboratories' Corporate Disclosure Statement and Notice of Interested Parties filed in this action, SJM was Plaintiff's "employing" entity during his employment from May 2023 through November 2024.

8.    Plaintiff's offer letter, executed on or about April 3, 2023, was issued on SJM letterhead and identified SJM as the offering entity but otherwise referenced "Abbott" throughout.

9.    Notwithstanding SJM's role as the nominal employing entity, Plaintiff's Employee Agreement (which was signed as a condition of employment) was made between Plaintiff and "ABBOTT LABORATORIES, an Illinois corporation, on behalf of itself and its Subsidiaries," defined as "a corporation or any other commercial organization or entity, and any branch or office

2

FIRST AMENDED COMPLAINT

of any of the foregoing, 50% or more of the assets or voting securities of which is owned or controlled directly or indirectly by ABBOTT."

10. Abbott and SJM at all relevant times operated as an integrated enterprise, sharing common management, centralized control of employment decisions, common ownership and financial control, and interrelated operations. Promotion decisions, compensation structures, and personnel policies applicable to Plaintiff were made and administered by Abbott and/or under Abbott's direction, including through Area Vice President Azita Bayat and other Abbott management personnel.

11. At all relevant times, Plaintiff performed this work as an employee of SJM, a wholly owned subsidiary of another company St. Jude Medical, LLC, which is in turn wholly owned and controlled by Abbott.

12. Plaintiff's role involved promoting and supporting advanced medical devices, including the Amulet device for stroke prevention and the PFO device, which are used in complex medical procedures performed in hospital settings. Plaintiff's duties included bringing in new business, training physicians, and serving as the technical expert during procedures.

13. Plaintiff earned approximately $200,000 annually as a Clinical Sales Specialist. The base salary for a Territory Manager position starts at $350,000 and can exceed $600,000.

14. Plaintiff, an African-American male, quickly distinguished himself as a top performer, becoming the only Clinical Sales Specialist in his region to meet or exceed sales quotas and being the only territory out of nine to achieve its plan during the relevant period.

15. Despite his exceptional performance and qualifications, Abbott denied Plaintiff promotion to the Territory Manager position on two separate occasions, awarding the positions to less qualified candidates who were either white, female, or both.

16. Plaintiff was forced to resign from employment with Abbott because Defendants' knowing and intentional violations of the public policies set forth in the California Fair Employment and Housing Act (the "FEHA," California Government Code section 12900, *et seq.*) and the California Labor Code made Plaintiff's working conditions so intolerable that he was compelled to resign.

FIRST AMENDED COMPLAINT

17.     At all relevant times, Defendants Abbott and SJM constituted a single integrated enterprise and/or joint employer with respect to Plaintiff's employment. Abbott and SJM shared interrelated operations, centralized control of labor relations and employment decisions (including those related to hiring, promotion, compensation, and termination), common management, and common ownership and financial control. The promotion decisions challenged in this action — including the decisions to award Territory Manager positions to less qualified white and/or female candidates over Plaintiff — were made by Abbott management personnel, including Area Vice President Azita Bayat and others employed by or acting on behalf of Abbott and/or SJM. The discriminatory acts alleged herein were thus committed by, authorized by, ratified by, and/or attributable to all Defendants.

18.     In the alternative, Plaintiff is informed and believes, and on that basis alleges, that there existed, at all relevant times, such a unity of interest and ownership among Abbott and SJM that the separateness of said entities has ceased. Defendants exercised domination and control over one another to such an extent that any individuality or separateness between them did not exist. Adherence to the fiction of the separate existence of these entities would permit abuse of the corporate privilege and would sanction fraud and promote injustice. Accordingly, the corporate form of SJM should be disregarded, and all Defendants should be treated as alter egos of one another.

19.     The names and capacities of DOES 1 through 25, inclusive ("DOES") are unknown to Plaintiff at this time, and Plaintiff therefore sues such DOE defendants under fictitious names. Plaintiff is informed and believes, and thereupon alleges, that each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and that Plaintiff's injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE defendants. Plaintiff will seek leave of the court to amend this complaint to allege the true names and capacities of such DOE defendants when ascertained.

20.     Plaintiff is informed and believes, and thereon alleges, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all Defendants, each acting as agents and/or employers, and/or under the direction and control of, each of the other

4
FIRST AMENDED COMPLAINT

Defendants, and that said acts and failure to act were within the course and scope of said agency, employment, and/or direction and control.

21.     Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, that they carried out a joint scheme, business plan, or policy in all respects pertinent thereto, and that the acts of each Defendant are legally attributable to the other Defendants.

22.     As a direct and proximate cause of Defendants' unlawful acts, Plaintiff has suffered, and continues to suffer, from loss of earnings in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

23.     All Defendants compelled, coerced, aided, and/or abetted the unlawful conduct alleged in this complaint, which conduct is unlawful under California Government Code section 12940(i) and the California Labor Code.

24.     All Defendants were responsible for the events and damages alleged herein, including on the following bases: (a) Defendants committed the acts alleged; (b) at all relevant times, one or more of the Defendants was the agent or employee, and/or acted under the control or supervision of one or more of the remaining Defendants, and in committing the acts alleged, acted within the course and scope of such agency and employment and/or are otherwise liable for Plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the Defendants such that any individuality and separateness between or among those Defendants has ceased, and Defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of Defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of Defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all Defendants were taken by employees, supervisors, executives, officers, and directors during employment with all Defendants, were taken on behalf of all Defendants, and were engaged in, authorized, ratified, and approved of by all other Defendants.

FIRST AMENDED COMPLAINT

## JURISDICTION AND VENUE

25.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Troy Easter is, and was at the time this action was commenced, a citizen of the State of California. Abbott and SJM are citizens of states other than California. Specifically, Abbott is incorporated under the laws of Illinois with its principal place of business in Abbott Park, Illinois; and SJM is organized under the laws of Minnesota with its principal place of business in Illinois. Accordingly, complete diversity of citizenship exists among the parties.

26.     This action was originally filed in the Superior Court of the State of California, County of Los Angeles, Case No. 26STCV04785, and was removed to this Court by Abbott pursuant to 28 U.S.C. §§ 1441 and 1446. Plaintiff's claims arise under California state law, including the California Fair Employment and Housing Act (Gov. Code §§ 12900 et seq.), California Labor Code § 1197.5, and California common law. All Defendants are subject to the jurisdiction of this Court. This First Amended Complaint is filed in the United States District Court for the Central District of California, where this action is now pending. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c)(2), 1441, and 1446(a). _Plaintiff worked for Defendants in Los Angeles County, California; the employment relationship and all adverse employment actions at issue in this action occurred in Los Angeles County; and Abbott and SJM each regularly transact business in Los Angeles County. Los Angeles County is within the jurisdiction of this Court.

28.     At all times relevant to this action, SJM was authorized to conduct business in California and regularly conducted business in Los Angeles County in connection with the employment at issue herein. SJM is therefore proper defendants in this action and subject to the jurisdiction of this Court.

29.     At all relevant times herein, Defendants employed Plaintiff, within the meaning of California Government Code section 12926(d). Accordingly, this lawsuit is properly venued in the

6

FIRST AMENDED COMPLAINT

Los Angeles County Superior Court pursuant to Government Code section 12965(c)(6) and California Code of Civil Procedure section 395.

30.     Prior to filing this action, Plaintiff timely exhausted his administrative remedies by filing an administrative complaint with the Civil Rights Department and receiving a right to sue letter on February 2, 2026. On June 12, 2026, Plaintiff amended his compliant with the Civil Rights Department to add SJM as a Respondent and received a right to sue on the same day.

## GENERAL ALLEGATIONS

31.     Plaintiff is an African-American male with more than a decade of experience in the pharmaceutical and medical device industries, including a proven track record of success. Plaintiff was particularly qualified to represent medical devices at Abbott because of his medical training as a physician's assistant.

32.     Plaintiff accepted employment with Defendants as a Clinical Sales Specialist ("CSS") in the Structural Prevention Division in May 2023. His role involved promoting and supporting advanced medical devices, including the Amulet device for stroke prevention and the PFO device. Plaintiff's offer letter, dated April 3, 2023, was issued on SJM letterhead, identified SJM as the offering entity at 8701 Bee Caves Road, Austin, Texas 78746, and referenced an initial base salary of $125,000. The Employee Agreement Plaintiff was required to execute was made between Plaintiff and "ABBOTT LABORATORIES, an Illinois corporation, on behalf of itself and its Subsidiaries."

33.     The Amulet device, one of the primary products Plaintiff was responsible for, is a cutting-edge medical device designed to prevent strokes by occluding the left atrial appendage in patients with atrial fibrillation. The PFO device, another product in the portfolio, addresses structural heart issues by sealing holes in the septum that can lead to strokes. These devices require highly specialized knowledge and technical expertise to market effectively, as they are used in complex medical procedures performed in hospital settings.

34.     Plaintiff worked in Los Angeles County, in the field, at various hospital settings where these advanced medical devices were used. His work location was primarily onsite at medical facilities throughout Los Angeles County.

7

FIRST AMENDED COMPLAINT

35.    As a CSS, Plaintiff's main duties included bringing in new business, training physicians on the use of advanced medical devices, promoting and supporting the Amulet and PFO devices, and serving as the technical expert during procedures. Plaintiff was the only CSS or Territory Manager ("TM") who was capable of serving as a technical expert during procedures. Plaintiff also performed many of the duties of a TM in addition to his CSS responsibilities.

36.    Plaintiff earned approximately $200,000 annually as a CSS. In contrast, the base salary for a TM position starts at $350,000 and can exceed $600,000 in total compensation.

37.    Plaintiff accepted the CSS position at Abbott/SJM in May 2023 with the understanding that the CSS position would serve as a stepping stone to a TM role, a position offering significantly higher compensation and responsibility. This opportunity was presented to him by his then-TM, Kevin Knutson, who assured Plaintiff that his skills and experience made him an ideal candidate for future advancement.

38.    Plaintiff successfully performed his duties as a CSS and quickly distinguished himself as a top performer. Plaintiff became the only CSS in his region to meet or exceed sales quotas during the relevant period. Plaintiff's territory was the only territory out of nine to achieve its plan.

39.    Throughout his employment, Plaintiff demonstrated exceptional performance, particularly given the specialized nature of the medical devices he represented and the technical expertise required to effectively support physicians during complex cardiac procedures.

40.    Despite his exceptional performance and qualifications, Defendants denied Plaintiff a promotion to the TM position on two separate occasions. Both times, the positions were awarded to less qualified external candidates, decisions that were tainted by discrimination based on race and gender.

41.    The first TM position became available in February or March 2024 when Mr. Knutson left the company. Plaintiff, who had been performing many of the duties of a TM in addition to his CSS responsibilities, was encouraged to apply. He interviewed for the role and believed he was well-qualified for the position.

8

FIRST AMENDED COMPLAINT

42. However, Defendants awarded the first TM position to Scott Leslie, a white male from a different division who lacked the clinical expertise and experience that Plaintiff possessed. Mr. Leslie came from a different division and did not have the specialized knowledge of left atrial appendage closure devices that Plaintiff had developed.

43. Notably, Plaintiff had already established a working relationship with the recommending physician that Defendants cited as a key factor in Mr. Leslie's selection. This undermined Defendants' stated justification for selecting Mr. Leslie over Plaintiff.

44. The selection of Mr. Leslie over Plaintiff was not based on qualifications or merit, but rather reflected discriminatory bias based on Plaintiff's race and gender.

45. Later in 2024, another TM position became available when Jim Kasha resigned. Plaintiff again applied for the position, submitting a detailed business plan and preparing thoroughly for the interview process.

46. Plaintiff received positive feedback regarding his application and believed he was the most qualified candidate for the position. Several physicians who worked with Plaintiff provided letters of recommendation supporting his application, attesting to his technical expertise and professional capabilities.

47. Despite his qualifications, proven track record, and the support of several physicians who provided letters of recommendation, Defendants awarded the second TM position to Kristin Szilagyi, a white female with no prior experience in the left atrial appendage closure field.

48. The selection of Ms. Szilagyi over Plaintiff was particularly egregious given her lack of relevant industry experience and the fact that she had not been involved in the cardiology field for several years. This confirmed that Defendants made its selection based on race and gender, not qualifications and proven success.

49. Ms. Szilagyi lacked the specialized knowledge and clinical background that Plaintiff possessed, yet she was selected over him for the TM position. This decision could not be justified on any legitimate, non-discriminatory basis.

FIRST AMENDED COMPLAINT

50. Plaintiff's role as a CSS required him to perform many of the same duties as a TM, including bringing in new business, training physicians, and serving as the technical expert during procedures. Indeed, Plaintiff was the only CSS or TM who was capable of serving as a technical expert during procedures.

51. Despite effectively performing the responsibilities of a TM, Defendants denied Plaintiff the title and the corresponding compensation. While Plaintiff earned approximately $200,000 annually as a CSS, the base salary for a TM starts at $350,000 and can exceed $600,000 in total compensation.

52. Defendants' management demonstrated a pattern of discriminatory practices that systematically disadvantaged Plaintiff. The TM positions for which Plaintiff applied were awarded to less qualified candidates who were either white, female, or both. This pattern reflects a pervasive bias within Defendants' management and a failure to provide equal opportunities for advancement to African-American male employees.

53. The discriminatory pattern at Defendants was not limited to Plaintiff's experience. Since the appointment of Azita Bayat as Area Vice President of the Structural Intervention Division, the majority of managerial hires in the division have been women, with only one male (a Caucasian one) hired during her tenure.

54. Further demonstrating the discriminatory environment, Ms. Bayat admitted that it was her goal to hire only women. This admission reveals the discriminatory intent behind Defendants' hiring and promotion decisions in the Structural Intervention Division.

55. This pattern of hiring and promotion decisions under Ms. Bayat's leadership further supports the conclusion that Defendants discriminated against Plaintiff due to his race and gender, systematically favoring white candidates and female candidates over qualified African-American male employees like Plaintiff.

56. Plaintiff attempted to address these issues internally, raising concerns about the discriminatory treatment he experienced. However, Defendants were dismissive of his concerns and failed to take his complaints seriously.

FIRST AMENDED COMPLAINT

57. Defendants' management failed to provide meaningful feedback or support following the rejection of Plaintiff's applications for promotion, despite his requests for such feedback. This lack of transparency prevented Plaintiff from understanding the true reasons for the rejection and further evidenced Defendants' discriminatory intent.

58. Other actions by Defendants further demonstrate a lack of transparency and integrity. Plaintiff discovered that emails and other records related to his applications and communications with management had been deleted from the company's system.

59. This included thank-you notes Plaintiff sent to interviewers following his interviews for the TM positions and letters of recommendation that had been submitted on his behalf by physicians who worked with Plaintiff. The deletion of these records raises serious concerns about Defendants' efforts to conceal their discriminatory practices.

60. The deletion of records related to Plaintiff's promotion applications and the supporting documentation submitted on his behalf suggests a deliberate attempt by Defendantsto eliminate evidence of their discriminatory decision-making process.

61. The discriminatory practices and lack of integrity within Defendants' management created an intolerable work environment for Plaintiff. Despite his dedication and contributions to the company, he was repeatedly overlooked for advancement opportunities for which he was qualified.

62. Plaintiff was undervalued by Defendants, despite being the top performer among CSS employees in his region and the only territory to achieve its performance plan. Defendants' treatment of Plaintiff made clear that his exceptional performance would not be rewarded with the advancement opportunities he deserved.

63. Plaintiff was subjected to unfair treatment throughout his employment, including being denied promotions in favor of less qualified candidates and being denied equal pay for effectively performing TM-level work without the corresponding title or compensation.

64. Defendants required Plaintiff to perform substantially the same work as employees in the TM position, including bringing in new business, training physicians, and serving as the

FIRST AMENDED COMPLAINT

technical expert during procedures. Plaintiff performed this work under similar working conditions as TM employees.

65.     Despite performing substantially similar work to TM employees, when viewed as a composite of skill, effort, and responsibility, Defendants paid Plaintiff at a significantly lower rate than it paid white and female employees who held TM positions. This constituted a violation of the California Equal Pay Act.

66.     The pay differential between Plaintiff's CSS position and the TM position was substantial. Plaintiff earned approximately $200,000 annually, while TM employees earned base salaries starting at $350,000 and total compensation that could exceed $600,000. This pay gap existed despite Plaintiff performing substantially similar work to TM employees.

67.     Defendants' discriminatory treatment of Plaintiff, including denying him promotions he was qualified for, failing to compensate him fairly for the work he performed, dismissing his complaints, and creating a hostile work environment, made his working conditions intolerable.

68.     The discriminatory practices and intolerable working conditions ultimately led to Plaintiff's constructive discharge. By November 2024, the work environment had become so intolerable due to the pervasive discrimination that Plaintiff was compelled to resign.

69.     A reasonable person in Plaintiff's position would have had no reasonable alternative except to resign given the intolerable working conditions created by Defendants' discriminatory practices. The denial of promotions, unequal pay, dismissive response to complaints, and deletion of records supporting his applications made it clear that Plaintiff had no future with Defendants despite his exceptional performance.

70.     Plaintiff was forced to resign from employment with Defendants in November 2024 because Defendants' knowing and intentional violations of the public policies set forth in the California Fair Employment and Housing Act and the California Labor Code made Plaintiff's working conditions so intolerable that he was compelled to resign.

71.     Economic damages: As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits,

12

FIRST AMENDED COMPLAINT

damage to his career, and lost wages, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

72.     Non-economic damages: As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

73.     Punitive damages: Defendants' conduct, committed by officers and managing agents, constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitled Plaintiff to an award of exemplary and/or punitive damages.

74.     Malice: Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) Defendants acted with intent to cause injury to Plaintiff and/or acted with reckless disregard for Plaintiff's injury, including by denying Plaintiff promotions for which he was qualified, terminating Plaintiff's employment through constructive discharge, and/or taking other adverse job actions against Plaintiff because of his race and gender and/or (b) Defendants' conduct was despicable and committed in willful and conscious disregard of Plaintiff's rights, health, and safety, including Plaintiff's right to be free of discrimination based on race and gender.

75.     Oppression: In addition, and/or alternatively, Defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that Defendants' actions against Plaintiff because of his race and gender were "despicable" and subjected Plaintiff to cruel and unjust hardship, in knowing disregard of Plaintiff's rights to a workplace free of discrimination based on race and gender.

76.     Fraud: In addition, and/or alternatively, Defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that Defendants asserted false (pretextual) grounds for denying promotions to Plaintiff, including citing relationships with physicians that Plaintiff had already established and claiming that less qualified candidates were better suited for the positions, to cause Plaintiff hardship and deprive him of legal rights.

FIRST AMENDED COMPLAINT

77. The pretextual nature of Defendants' stated reasons for denying Plaintiff promotions, combined with the deletion of records related to his applications and the pattern of discriminatory hiring under Area VP Bayat's tenure, demonstrates that Defendants acted with fraud in denying Plaintiff the advancement opportunities he deserved.

78. Attorney fees: Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Discrimination on the Basis of Race and Gender**

**(Violation of the FEHA, Cal. Gov't Code § 12940(a))**

**(Against All Defendants)**

79. Plaintiff incorporates by reference, and realleges as if fully stated herein, each and every allegation set forth above.

80. Plaintiff, an African-American male, was a member of a protected class within the meaning of the FEHA and is entitled to its guarantees of full and equal access to employment. *See* Cal. Gov't Code § 12926.1.

81. The FEHA provides that the opportunity to seek, obtain, and hold employment without discrimination because of, *inter alia*, race and gender is a civil right. *See* Cal. Gov't Code §§ 12921(a).

82. The purpose of the FEHA is to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on the account of, *inter alia*, a person's race and gender. The FEHA recognizes that the practice of denying employment opportunities and discriminating in terms of employment substantially and adversely affects the interest of employees, employers, and the public in general. See Cal. Gov't Code § 12920.

83. The FEHA makes it an unlawful employment practice for an employer to discriminate against an employee "in terms, conditions, or privileges of employment" on the basis of the employee's race and gender. Cal. Gov't Code § 12940(a).

14

FIRST AMENDED COMPLAINT

84. Defendants subjected Plaintiff to unlawful discrimination by denying him promotion to the Territory Manager position on two separate occasions, despite his qualifications and exceptional performance, in favor of less qualified white and female applicants. Defendants also paid Plaintiff far less than white and female employees who performed substantially similar work.

85. Plaintiff's race and gender were motivating factors in Defendants' decisions to take these adverse job actions against Plaintiff. Plaintiff's white and female colleagues were treated more favorably than Plaintiff, including being promoted to Territory Manager positions despite being less qualified. Thus, Defendants discriminated against Plaintiff, in whole or in part, on the basis of Plaintiff's race and gender, in violation of California Government Code section 12940(a).

86. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits, and has suffered and continues to suffer humiliation, damage to reputation, emotional distress, and physical and mental pain and anguish, causing damages in a sum according to proof.

87. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(c)(6), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

88. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

**SECOND CAUSE OF ACTION**

**Failure to Prevent, Investigate, and Remedy Discrimination and/or Harassment**

**(Violation of the FEHA, Cal. Gov't Code § 12940(k))**

**(Against All Defendants)**

89. Plaintiff incorporates by reference, and realleges as if fully stated herein, each and every allegation set forth above.

15

90. California law requires employers to "take all reasonable steps necessary to prevent" and correct wrongful behavior, including but not limited to, discriminatory and harassing behavior in the workplace. *See* Cal. Gov't Code §12940(k). This statute required Defendants to take all reasonable steps to prevent harassment and discrimination based on Plaintiff's race and gender.

91. Defendants failed to prevent discrimination on the basis of Plaintiff's race and gender.

92. Although Defendants were aware of actions and comments to and about Plaintiff that constituted discrimination and/or harassment, they did not take immediate or corrective action to prevent further harassment or discrimination against Plaintiff.

93. Defendants violated California law by failing to take all reasonable steps necessary to prevent the discrimination and harassment from occurring, as required by law. *See* Cal. Gov't. Code § 12940(k); *see* also Cal. Gov't Code § 12940(j). ("Harassment of an employee ... shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.").

94. As a proximate result of Defendants' willful, knowing, and intentional failure to prevent, investigate or remedy discrimination and harassment against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

95. As a proximate result of Defendants' willful, knowing, and intentional failure to prevent, investigate, or remedy discrimination and harassment against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, damage to reputation, emotional distress, and mental and physical pain and anguish, causing damage in a sum according to proof.

96. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(c)(6), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

97. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive

FIRST AMENDED COMPLAINT

amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

## THIRD CAUSE OF ACTION

### Wrongful Termination/Constructive Discharge

### (Against All Defendants)

98.     Plaintiff incorporates by reference, and realleges as if fully stated herein, each and every allegation set forth above.

99.     Under California law, it is unlawful for an employer to terminate an employee in violation of a fundamental public policy of the United States of America and/or the State of California.

100.     Defendants' knowing and intentional violations of the public policy protections set forth in the FEHA and the California Equal Pay Act, as alleged herein, made Plaintiff's working conditions so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign. Those intolerable working conditions did, in fact, compel Plaintiff to resign.

101.     As a proximate result of Defendants' willful, knowing, and intentional conduct, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits, and has suffered and continues to suffer humiliation, damage to reputation, emotional distress, and physical and mental pain and anguish, causing damage in a sum according to proof.

102.     Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

## FOURTH CAUSE OF ACTION

### Violation of Equal Pay Act

### (California Labor Code § 1197.5(a))

### (Against All Defendants)

17

FIRST AMENDED COMPLAINT

103. Plaintiff incorporates by reference, and realleges as if fully stated herein, each and every allegation set forth above.

104. At all relevant times, California Labor Code section 1197.5 was in effect and was binding on Defendants. This statute prohibits Defendants from paying any individual at a lower rate than employees of a different race and gender for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

105. Defendants violated California Labor Code section 1197.5 by failing to pay Plaintiff at the same rate as white and female employees for substantially similar Territory Manager work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

106. As a proximate result of Defendants' willful, knowing, and intentional violation of Labor Code section 1197.5, Plaintiff sustained substantial losses of earnings and employment benefits. Plaintiff is entitled to the balance of the wages, including interest, and an equal amount as liquidated damages. See California Labor Code § 1197.5(h).

107. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Labor Code section 1197.5(h), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

108. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

## PRAYER FOR RELIEF

109. WHEREFORE, Plaintiff, Troy Easter prays for judgment against Defendants as follows:

### As to the First and Second Causes of Action

110. That the Court declare, adjudge, and decree that Defendants violated the FEHA;

111. For back pay;

112. For front pay;

18

FIRST AMENDED COMPLAINT

113. For reinstatement or, in lieu thereof, for front pay;

114. For compensatory damages for economic losses;

115. For compensatory damages for emotional distress;

116. For punitive damages in an amount to be determined by the Court according to proof under Cal. Civ. Code § 3294;

117. For an award of costs including expert witness fees under Cal. Gov. Code § 12965(b) or § 12965(c)(6);

118. For an award of reasonable attorneys' fees under Cal. Gov. Code § 12965(b) or § 12965(c)(6);

119. For an award of pre-judgment and post-judgment interest for the maximum amount allowed by law on all damages awarded under Cal. Civ. Code §§ 3287-3288 and Cal. Code Civ. Proc. § 685.010;

120. For any and all other relief the Court deems just and proper.

### As to the Third Cause of Action

112. For general and special damages;

113. For compensatory damages;

114. For punitive damages in an amount to be determined by the Court according to proof under Cal. Civ. Code § 3294;

115. For an award of pre-judgment and post-judgment interest for the maximum amount allowed by law on all damages awarded under Cal. Civ. Code §§ 3287-3288 and Cal. Code Civ. Proc. § 685.010;

116. For any and all other relief the Court deems just and proper.

### As to the Fourth Cause of Action

117. That the Court declare, adjudge, and decree that Defendants violated California Labor Code section 1197.5;

118. For damages for unpaid wages;

119. For liquidated damages under Labor Code § 1197.5(c);

120. For interest on unpaid wages under Labor Code § 218.5;

19

FIRST AMENDED COMPLAINT

121.    For attorney's fees and costs under Labor Code § 218.5;

122.    For an award of pre-judgment and post-judgment interest for the maximum amount allowed by law on all damages awarded under Cal. Civ. Code §§ 3287-3288 and Cal. Code Civ. Proc. § 685.010;

123.    For any and all other relief the Court deems just and proper.

### **REQUEST FOR JURY TRIAL**

124.    Plaintiff hereby demands a trial by jury on all issues.

Dated: June 24, 2026

Respectfully submitted,
ADVANTAGE ADVOCATES, P.C.

By: _____
Amy S. Ramsey
Attorney for Plaintiff
Troy Easter

20

FIRST AMENDED COMPLAINT

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to this action.

On June 24, 2026, I electronically filed the foregoing document described as: **FIRST AMENDED COMPLAINT**

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered CM/ECF users.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 24, 2026, at Pasadena, California.

_____/s/ Amy S. Ramsey_
Amy S. Ramsey

1
PROOF OF SERVICE