SEYFARTH SHAW LLP
Michele J. Beilke (SBN 194098)
mbeilke@seyfarth.com
Julia Y. Trankiem (SBN 228666)
jtrankiem@seyfarth.com
Sage E. Fishelman (SBN 339529)
sfishelman@seyfarth.com
Wei Kit (Ricky) Tai (SBN 350655)
wktai@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, CA 90017-5793
Telephone:   (213) 270-9600
Facsimile:    (213) 270-9601

Attorneys for Defendant
ABBOTT LABORATORIES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY EASTER,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES (an Illinois corporation), ST. JUDE MEDICAL S.C., INC. (a Minnesota corporation), and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:26-cv-02998-JLS-AS<br><br>**DEFENDANT ABBOTT LABORATORIES' ANSWER TO PLAINTIFF TROY EASTER'S FIRST AMENDED COMPLAINT**<br><br>Complaint Filed:  February 13, 2026<br>Trial Date:        None Set |

Defendant Abbott Laboratories ("Abbott"), by and through its undersigned counsel, hereby answers the First Amended Complaint ("FAC") of Plaintiff Troy Easter ("Plaintiff") as follows. Abbott responds only on behalf of itself, and not on behalf of Defendant St. Jude Medical S.C., Inc. ("SJM"), which has not yet been served and which will respond separately within the time permitted by the Federal Rules of Civil Procedure consistent with the parties' June 16, 2026 Stipulation Regarding Filing of First Amended Complaint (ECF No. 13), under which all defenses are reserved as to relation back, timeliness, exhaustion, service, and personal jurisdiction.

Except as expressly admitted below, Abbott denies each and every allegation contained in the FAC, including that it ever employed Plaintiff, and further denies that it engaged in any unlawful conduct, denies that Plaintiff suffered any actionable harm, and denies that Plaintiff is entitled to any relief whatsoever. Except as expressly admitted below, Abbott denies each and every allegation contained in the FAC. Abbott reserves the right to amend or supplement this Answer, including with additional affirmative defenses, as discovery progresses.

## THE PARTIES

**COMPLAINT ¶1:**

At all times relevant to this action, Plaintiff resided in Los Angeles County, California.

**ANSWER:**

Abbott lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 and, on that basis, denies them.

**COMPLAINT ¶2:**

Abbott is a medical technology and pharmaceutical manufacturer.

**ANSWER:**

Admitted that Abbott is a healthcare and medical technology company whose businesses include medical devices, diagnostics, nutrition products, and medicines. Except as expressly admitted, denied.

2

**COMPLAINT ¶3:**

Plaintiff is informed and believes and on that basis alleges that Abbott is a corporation organized and existing under the laws of Illinois with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064.

**ANSWER:**

Admitted that Abbott is a corporation organized and existing under the laws of Illinois with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064. Except as expressly admitted, denied.

**COMPLAINT ¶4:**

Abbott Laboratories is, and was at all times in this complaint, authorized to conduct business in California. Abbott's place of business, where the below-described incidents took place, is in Los Angeles County.

**ANSWER:**

Admitted that Abbott is authorized to conduct business in California. Except as expressly admitted, denied.

**COMPLAINT ¶5:**

Plaintiff is informed and believes, and on that basis alleges, that SJM is a corporation organized and existing under the laws of Minnesota, with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064 (the same as Abbott). SJM is, and was at all times mentioned in this complaint, authorized to conduct business in California and regularly conducts business in Los Angeles County.

**ANSWER:**

Admitted that SJM is an indirect wholly-owned subsidiary of Abbott Laboratories, organized under the laws of Minnesota, with its principal place of business in Abbott Park, Illinois, and authorized to conduct business in California. Except as expressly admitted, denied.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**COMPLAINT ¶6:**

Plaintiff worked for Defendants as a Clinical Sales Specialist in the Structural Prevention Division in Los Angeles County, in the field, from May 2023 through approximately November 15, 2024.

**ANSWER:**

Admitted that Plaintiff was employed by SJM as a Clinical Sales Specialist in the Structural Heart Division from on or about May 1, 2023 through his voluntary resignation effective on or about November 6, 2024. Except as expressly admitted, denied. Abbott specifically denies that Plaintiff was employed by Abbott.

**COMPLAINT ¶7:**

As reflected in Abbott Laboratories' Corporate Disclosure Statement and Notice of Interested Parties filed in this action, SJM was Plaintiff's "employing" entity during his employment from May 2023 through November 2024.

**ANSWER:**

Admitted that the Corporate Disclosure Statement and Notice of Interested Parties identifies SJM as Plaintiff's employing entity. The Corporate Disclosure Statement and Notice of Interested Parties speak for themselves, and any allegation inconsistent with those documents is denied. Except as expressly admitted, denied.

**COMPLAINT ¶8:**

Plaintiff's offer letter, executed on or about April 3, 2023, was issued on SJM letterhead and identified SJM as the offering entity but otherwise referenced "Abbott" throughout.

**ANSWER:**

Admitted that Plaintiff's offer letter, dated April 3, 2023, was issued on SJM letterhead and identified SJM as the offering entity. Abbott denies the characterization that the offer letter "otherwise referenced 'Abbott' throughout"; the document speaks for itself. Except as expressly admitted, denied.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**COMPLAINT ¶9:**

Notwithstanding SJM's role as the nominal employing entity, Plaintiff's Employee Agreement (which was signed as a condition of employment) was made between Plaintiff and "ABBOTT LABORATORIES, an Illinois corporation, on behalf of itself and its Subsidiaries," defined as "a corporation or any other commercial organization or entity, and any branch or office of any of the foregoing, 50% or more of the assets or voting securities of which is owned or controlled directly or indirectly by ABBOTT."

**ANSWER:**

Admitted that Plaintiff signed an Employee Agreement that, by its terms, was made between Plaintiff and "ABBOTT LABORATORIES, an Illinois corporation, on behalf of itself and its Subsidiaries." The Employee Agreement speaks for itself, and Abbott denies any characterization inconsistent with its terms. Except as expressly admitted, denied.

**COMPLAINT ¶10:**

Abbott and SJM at all relevant times operated as an integrated enterprise, sharing common management, centralized control of employment decisions, common ownership and financial control, and interrelated operations. Promotion decisions, compensation structures, and personnel policies applicable to Plaintiff were made and administered by Abbott and/or under Abbott's direction, including through Area Vice President Azita Bayat and other Abbott management personnel.

**ANSWER:**

Denied.

**COMPLAINT ¶11:**

At all relevant times, Plaintiff performed this work as an employee of SJM, a wholly owned subsidiary of another company St. Jude Medical, LLC, which is in turn wholly owned and controlled by Abbott.

5

**ANSWER:**

Admitted that Plaintiff was employed by SJM, SJM is a wholly owned subsidiary of another company St. Jude Medical, LLC, and that Abbott is the sole member of St. Jude Medical, LLC. Except as expressly admitted, denied.

**COMPLAINT ¶12:**

Plaintiff's role involved promoting and supporting advanced medical devices, including the Amulet device for stroke prevention and the PFO device, which are used in complex medical procedures performed in hospital settings. Plaintiff's duties included bringing in new business, training physicians, and serving as the technical expert during procedures.

**ANSWER:**

Admitted that Plaintiff's role as CSS involved supporting advanced medical devices, including the Amulet device for stroke prevention and the PFO device, which are used in complex medical procedures performed in hospital settings. Also admitted that Plaintiff's duties as CSS included training physicians and providing technical support during procedures. Except as expressly admitted, denied.

**COMPLAINT ¶13:**

Plaintiff earned approximately $200,000 annually as a Clinical Sales Specialist. The base salary for a Territory Manager position starts at $350,000 and can exceed $600,000.

**ANSWER:**

Denied.

**COMPLAINT ¶14:**

Plaintiff, an African-American male, quickly distinguished himself as a top performer, becoming the only Clinical Sales Specialist in his region to meet or exceed sales quotas and being the only territory out of nine to achieve its plan during the relevant period.

6

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**ANSWER:**

Admitted that Plaintiff identifies as an African-American male. Except as expressly admitted, denied.

**COMPLAINT ¶15:**

Despite his exceptional performance and qualifications, Abbott denied Plaintiff promotion to the Territory Manager position on two separate occasions, awarding the positions to less qualified candidates who were either white, female, or both.

**ANSWER:**

Denied.

**COMPLAINT ¶16:**

Plaintiff was forced to resign from employment with Abbott because Defendants' knowing and intentional violations of the public policies set forth in the California Fair Employment and Housing Act (the "FEHA," California Government Code section 12900, et seq.) and the California Labor Code made Plaintiff's working conditions so intolerable that he was compelled to resign.

**ANSWER:**

Denied.

**COMPLAINT ¶17:**

At all relevant times, Defendants Abbott and SJM constituted a single integrated enterprise and/or joint employer with respect to Plaintiff's employment. Abbott and SJM shared interrelated operations, centralized control of labor relations and employment decisions (including those related to hiring, promotion, compensation, and termination), common management, and common ownership and financial control. The promotion decisions challenged in this action — including the decisions to award Territory Manager positions to less qualified white and/or female candidates over Plaintiff — were made by Abbott management personnel, including Area Vice President Azita Bayat and others employed by or acting on behalf of Abbott and/or SJM. The discriminatory acts alleged

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

herein were thus committed by, authorized by, ratified by, and/or attributable to all Defendants.

**ANSWER:**

Denied.

**COMPLAINT ¶18:**

In the alternative, Plaintiff is informed and believes, and on that basis alleges, that there existed, at all relevant times, such a unity of interest and ownership among Abbott and SJM that the separateness of said entities has ceased. Defendants exercised domination and control over one another to such an extent that any individuality or separateness between them did not exist. Adherence to the fiction of the separate existence of these entities would permit abuse of the corporate privilege and would sanction fraud and promote injustice. Accordingly, the corporate form of SJM should be disregarded, and all Defendants should be treated as alter egos of one another.

**ANSWER:**

Denied.

**COMPLAINT ¶19:**

The names and capacities of DOES 1 through 25, inclusive ("DOES") are unknown to Plaintiff at this time, and Plaintiff therefore sues such DOE defendants under fictitious names. Plaintiff is informed and believes, and thereupon alleges, that each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and that Plaintiff's injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE defendants. Plaintiff will seek leave of the court to amend this complaint to allege the true names and capacities of such DOE defendants when ascertained.

**ANSWER:**

Abbott lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 regarding the DOE defendants and, on that basis, denies them.

**COMPLAINT ¶20:**

Plaintiff is informed and believes, and thereon alleges, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all Defendants, each acting as agents and/or employers, and/or under the direction and control of, each of the other Defendants, and that said acts and failure to act were within the course and scope of said agency, employment, and/or direction and control.

**ANSWER:**

Denied.

**COMPLAINT ¶21:**

Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, that they carried out a joint scheme, business plan, or policy in all respects pertinent thereto, and that the acts of each Defendant are legally attributable to the other Defendants.

**ANSWER:**

Denied.

**COMPLAINT ¶22:**

As a direct and proximate cause of Defendants' unlawful acts, Plaintiff has suffered, and continues to suffer, from loss of earnings in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

**ANSWER:**

Denied.

**COMPLAINT ¶23:**

All Defendants compelled, coerced, aided, and/or abetted the unlawful conduct alleged in this complaint, which conduct is unlawful under California Government Code section 12940(i) and the California Labor Code.

**ANSWER:**

Denied.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**COMPLAINT ¶24:**

All Defendants were responsible for the events and damages alleged herein, including on the following bases: (a) Defendants committed the acts alleged; (b) at all relevant times, one or more of the Defendants was the agent or employee, and/or acted under the control or supervision of one or more of the remaining Defendants, and in committing the acts alleged, acted within the course and scope of such agency and employment and/or are otherwise liable for Plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the Defendants such that any individuality and separateness between or among those Defendants has ceased, and Defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of Defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of Defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all Defendants were taken by employees, supervisors, executives, officers, and directors during employment with all Defendants, were taken on behalf of all Defendants, and were engaged in, authorized, ratified, and approved of by all other Defendants.

**ANSWER:**

The allegations of Paragraph 24 state legal conclusions to which no response is required. To the extent a response is required, denied.

## JURISDICTION AND VENUE

**COMPLAINT ¶25:**

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Troy Easter is, and was at the time this action was commenced, a citizen of the State of California. Abbott and SJM are citizens of states other than California. Specifically, Abbott is incorporated under the laws of Illinois with its principal place of business in Abbott Park, Illinois; and SJM is

10

organized under the laws of Minnesota with its principal place of business in Illinois. Accordingly, complete diversity of citizenship exists among the parties.

**ANSWER:**

The allegations of Paragraph 25 state legal conclusions to which no response is required. To the extent a response is required, Abbott does not contest this Court's subject matter jurisdiction over this action.

**COMPLAINT ¶26:**

This action was originally filed in the Superior Court of the State of California, County of Los Angeles, Case No. 26STCV04785, and was removed to this Court by Abbott pursuant to 28 U.S.C. §§ 1441 and 1446. Plaintiff's claims arise under California state law, including the California Fair Employment and Housing Act (Gov. Code §§ 12900 et seq.), California Labor Code § 1197.5, and California common law. All Defendants are subject to the jurisdiction of this Court. This First Amended Complaint is filed in the United States District Court for the Central District of California, where this action is now pending. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c)(2), 1441, and 1446(a). Plaintiff worked for Defendants in Los Angeles County, California; the employment relationship and all adverse employment actions at issue in this action occurred in Los Angeles County; and Abbott and SJM each regularly transact business in Los Angeles County. Los Angeles County is within the jurisdiction of this Court.

**ANSWER:**

Admitted that this action was originally filed in the Superior Court of the State of California, County of Los Angeles, Case No. 26STCV04785, and was removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Admitted that the FAC purports to assert claims under California state law. Admitted that venue is proper in the United States District Court for the Central District of California. The remaining allegations of Paragraph 26 state legal conclusions to which no response is required; to the extent a response is required, denied.

**COMPLAINT ¶27:**

[Missing in FAC.]

**ANSWER:**

No allegation appears in Paragraph 27 of the FAC; accordingly, no response is required.

**COMPLAINT ¶28:**

At all times relevant to this action, SJM was authorized to conduct business in California and regularly conducted business in Los Angeles County in connection with the employment at issue herein. SJM is therefore proper defendants in this action and subject to the jurisdiction of this Court.

**ANSWER:**

Admitted that SJM is authorized to conduct business in California. The remaining allegations state legal conclusions to which no response is required. Abbott does not respond on behalf of SJM, which has not yet been served, and SJM's defenses (including as to personal jurisdiction and service) are reserved consistent with the parties' June 16, 2026 Stipulation (ECF No. 13). Except as expressly admitted, denied.

**COMPLAINT ¶29:**

At all relevant times herein, Defendants employed Plaintiff, within the meaning of California Government Code section 12926(d). Accordingly, this lawsuit is properly venued in the Los Angeles County Superior Court pursuant to Government Code section 12965(c)(6) and California Code of Civil Procedure section 395.

**ANSWER:**

The remaining allegations of Paragraph 29 state legal conclusions to which no response is required; to the extent a response is required, denied. Abbott specifically denies that it "employed Plaintiff" within the meaning of California Government Code section 12926(d) or otherwise.

**COMPLAINT ¶30:**

Prior to filing this action, Plaintiff timely exhausted his administrative remedies by filing an administrative complaint with the Civil Rights Department and receiving a right to sue letter on February 2, 2026. On June 12, 2026, Plaintiff amended his complaint with the Civil Rights Department to add SJM as a Respondent and received a right to sue on the same day.

**ANSWER:**

Admitted that Plaintiff filed an administrative complaint with the California Civil Rights Department ("CRD") and has stated that he received a right-to-sue letter on February 2, 2026. Admitted that Plaintiff has stated he amended his administrative complaint to add SJM as a Respondent on June 12, 2026 and received a right-to-sue letter on the same day. Abbott denies that Plaintiff timely or properly exhausted his administrative remedies as to all claims and as to all Defendants, and reserves all defenses based on the timeliness and scope of Plaintiff's administrative charges. Except as expressly admitted, denied.

**GENERAL ALLEGATIONS**

**COMPLAINT ¶31:**

Plaintiff is an African-American male with more than a decade of experience in the pharmaceutical and medical device industries, including a proven track record of success. Plaintiff was particularly qualified to represent medical devices at Abbott because of his medical training as a physician's assistant.

**ANSWER:**

Admitted on information and belief, based on Plaintiff's self-reported resume, that Plaintiff has prior experience in the pharmaceutical and medical device industries and that Plaintiff holds a Physician Assistant credential. Except as expressly admitted, denied.

**COMPLAINT ¶32:**

Plaintiff accepted employment with Defendants as a Clinical Sales Specialist ("CSS") in the Structural Prevention Division in May 2023. His role involved promoting

13

and supporting advanced medical devices, including the Amulet device for stroke prevention and the PFO device. Plaintiff's offer letter, dated April 3, 2023, was issued on SJM letterhead, identified SJM as the offering entity at 8701 Bee Caves Road, Austin, Texas 78746, and referenced an initial base salary of $125,000. The Employee Agreement Plaintiff was required to execute was made between Plaintiff and "ABBOTT LABORATORIES, an Illinois corporation, on behalf of itself and its Subsidiaries."

**ANSWER:**

Admitted that Plaintiff accepted employment with SJM as a CSS in the Structural Heart Division in May 2023; that his role involved promoting the Amulet and PFO devices; that his offer letter dated April 3, 2023 was on SJM letterhead, identified SJM as the offering entity at 8701 Bee Caves Road, Austin, Texas 78746, and referenced an initial base salary of $125,000. Admitted that the Employee Agreement Plaintiff executed was made between Plaintiff and "ABBOTT LABORATORIES, an Illinois corporation, on behalf of itself and its Subsidiaries." Except as expressly admitted, denied.

**COMPLAINT ¶33:**

The Amulet device, one of the primary products Plaintiff was responsible for, is a cutting-edge medical device designed to prevent strokes by occluding the left atrial appendage in patients with atrial fibrillation. The PFO device, another product in the portfolio, addresses structural heart issues by sealing holes in the septum that can lead to strokes. These devices require highly specialized knowledge and technical expertise to market effectively, as they are used in complex medical procedures performed in hospital settings.

**ANSWER:**

Admitted that the Amulet device is designed to occlude the left atrial appendage in certain patients with atrial fibrillation and that the PFO device is used for patent foramen ovale closure. Except as expressly admitted, denied.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**COMPLAINT ¶34:**

Plaintiff worked in Los Angeles County, in the field, at various hospital settings where these advanced medical devices were used. His work location was primarily onsite at medical facilities throughout Los Angeles County.

**ANSWER:**

Admitted that Plaintiff worked in the field in Los Angeles County primarily at hospital settings. Except as expressly admitted, denied.

**COMPLAINT ¶35:**

As a CSS, Plaintiff's main duties included bringing in new business, training physicians on the use of advanced medical devices, promoting and supporting the Amulet and PFO devices, and serving as the technical expert during procedures. Plaintiff was the only CSS or Territory Manager ("TM") who was capable of serving as a technical expert during procedures. Plaintiff also performed many of the duties of a TM in addition to his CSS responsibilities.

**ANSWER:**

Admitted that Plaintiff's duties as CSS included responsibilities relating to physician training and product support. Except as expressly admitted, denied.

**COMPLAINT ¶36:**

Plaintiff earned approximately $200,000 annually as a CSS. In contrast, the base salary for a TM position starts at $350,000 and can exceed $600,000 in total compensation.

**ANSWER:**

Denied.

**COMPLAINT ¶37:**

Plaintiff accepted the CSS position at Abbott/SJM in May 2023 with the understanding that the CSS position would serve as a stepping stone to a TM role, a position offering significantly higher compensation and responsibility. This opportunity was presented to him by his then-TM, Kevin Knutson, who assured Plaintiff that his skills and experience made him an ideal candidate for future advancement.

**ANSWER:**

Denied.

**COMPLAINT ¶38:**

Plaintiff successfully performed his duties as a CSS and quickly distinguished himself as a top performer. Plaintiff became the only CSS in his region to meet or exceed sales quotas during the relevant period. Plaintiff's territory was the only territory out of nine to achieve its plan.

**ANSWER:**

Denied.

**COMPLAINT ¶39:**

Throughout his employment, Plaintiff demonstrated exceptional performance, particularly given the specialized nature of the medical devices he represented and the technical expertise required to effectively support physicians during complex cardiac procedures.

**ANSWER:**

Denied.

**COMPLAINT ¶40:**

Despite his exceptional performance and qualifications, Defendants denied Plaintiff a promotion to the TM position on two separate occasions. Both times, the positions were awarded to less qualified external candidates, decisions that were tainted by discrimination based on race and gender.

**ANSWER:**

Admitted that Plaintiff applied for two Territory Manager positions during his employment and was not selected for either position. Except as expressly admitted, denied.

**COMPLAINT ¶41:**

The first TM position became available in February or March 2024 when Mr. Knutson left the company. Plaintiff, who had been performing many of the duties of a TM

in addition to his CSS responsibilities, was encouraged to apply. He interviewed for the role and believed he was well-qualified for the position.

**ANSWER:**

Admitted that Kevin Knutson separated from employment in or around October 2023. Admitted that Plaintiff applied for the open requisition and interviewed for the role. Except as expressly admitted, denied.

**COMPLAINT ¶42:**

However, Defendants awarded the first TM position to Scott Leslie, a white male from a different division who lacked the clinical expertise and experience that Plaintiff possessed. Mr. Leslie came from a different division and did not have the specialized knowledge of left atrial appendage closure devices that Plaintiff had developed.

**ANSWER:**

Admitted that Scott Leslie was selected for the position. Except as expressly admitted, denied.

**COMPLAINT ¶43:**

Notably, Plaintiff had already established a working relationship with the recommending physician that Defendants cited as a key factor in Mr. Leslie's selection. This undermined Defendants' stated justification for selecting Mr. Leslie over Plaintiff.

**ANSWER:**

Denied.

**COMPLAINT ¶44:**

The selection of Mr. Leslie over Plaintiff was not based on qualifications or merit, but rather reflected discriminatory bias based on Plaintiff's race and gender.

**ANSWER:**

Denied.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**COMPLAINT ¶45:**

Later in 2024, another TM position became available when Jim Kasha resigned. Plaintiff again applied for the position, submitting a detailed business plan and preparing thoroughly for the interview process.

**ANSWER:**

Admitted that Jim Kasha was a Territory Manager and that he separated from employment in 2024. Admitted that Plaintiff applied for a Territory Manager requisition (Requisition 31095911) on August 19, 2024. Except as expressly admitted, denied.

**COMPLAINT ¶46:**

Plaintiff received positive feedback regarding his application and believed he was the most qualified candidate for the position. Several physicians who worked with Plaintiff provided letters of recommendation supporting his application, attesting to his technical expertise and professional capabilities.

**ANSWER:**

Denied.

**COMPLAINT ¶47:**

Despite his qualifications, proven track record, and the support of several physicians who provided letters of recommendation, Defendants awarded the second TM position to Kristin Szilagyi, a white female with no prior experience in the left atrial appendage closure field.

**ANSWER:**

Denied.

**COMPLAINT ¶48:**

The selection of Ms. Szilagyi over Plaintiff was particularly egregious given her lack of relevant industry experience and the fact that she had not been involved in the cardiology field for several years. This confirmed that Defendants made its selection based on race and gender, not qualifications and proven success.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**ANSWER:**

Denied.

**COMPLAINT ¶49:**

Ms. Szilagyi lacked the specialized knowledge and clinical background that Plaintiff possessed, yet she was selected over him for the TM position. This decision could not be justified on any legitimate, non-discriminatory basis.

**ANSWER:**

Denied.

**COMPLAINT ¶50:**

Plaintiff's role as a CSS required him to perform many of the same duties as a TM, including bringing in new business, training physicians, and serving as the technical expert during procedures. Indeed, Plaintiff was the only CSS or TM who was capable of serving as a technical expert during procedures.

**ANSWER:**

Denied.

**COMPLAINT ¶51:**

Despite effectively performing the responsibilities of a TM, Defendants denied Plaintiff the title and the corresponding compensation. While Plaintiff earned approximately $200,000 annually as a CSS, the base salary for a TM starts at $350,000 and can exceed $600,000 in total compensation.

**ANSWER:**

Denied.

**COMPLAINT ¶52:**

Defendants' management demonstrated a pattern of discriminatory practices that systematically disadvantaged Plaintiff. The TM positions for which Plaintiff applied were awarded to less qualified candidates who were either white, female, or both. This pattern reflects a pervasive bias within Defendants' management and a failure to provide equal opportunities for advancement to African-American male employees.

19

**ANSWER:**

Denied.

**COMPLAINT ¶53:**

The discriminatory pattern at Defendants was not limited to Plaintiff's experience. Since the appointment of Azita Bayat as Area Vice President of the Structural Intervention Division, the majority of managerial hires in the division have been women, with only one male (a Caucasian one) hired during her tenure.

**ANSWER:**

Denied.

**COMPLAINT ¶54:**

Further demonstrating the discriminatory environment, Ms. Bayat admitted that it was her goal to hire only women. This admission reveals the discriminatory intent behind Defendants' hiring and promotion decisions in the Structural Intervention Division.

**ANSWER:**

Denied.

**COMPLAINT ¶55:**

This pattern of hiring and promotion decisions under Ms. Bayat's leadership further supports the conclusion that Defendants discriminated against Plaintiff due to his race and gender, systematically favoring white candidates and female candidates over qualified African-American male employees like Plaintiff.

**ANSWER:**

Denied.

**COMPLAINT ¶56:**

Plaintiff attempted to address these issues internally, raising concerns about the discriminatory treatment he experienced. However, Defendants were dismissive of his concerns and failed to take his complaints seriously.

**ANSWER:**

Denied.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**COMPLAINT ¶57:**

Defendants' management failed to provide meaningful feedback or support following the rejection of Plaintiff's applications for promotion, despite his requests for such feedback. This lack of transparency prevented Plaintiff from understanding the true reasons for the rejection and further evidenced Defendants' discriminatory intent.

**ANSWER:**

Denied.

**COMPLAINT ¶58:**

Other actions by Defendants further demonstrate a lack of transparency and integrity. Plaintiff discovered that emails and other records related to his applications and communications with management had been deleted from the company's system.

**ANSWER:**

Denied.

**COMPLAINT ¶59:**

This included thank-you notes Plaintiff sent to interviewers following his interviews for the TM positions and letters of recommendation that had been submitted on his behalf by physicians who worked with Plaintiff. The deletion of these records raises serious concerns about Defendants' efforts to conceal their discriminatory practices.

**ANSWER:**

Denied.

**COMPLAINT ¶60:**

The deletion of records related to Plaintiff's promotion applications and the supporting documentation submitted on his behalf suggests a deliberate attempt by Defendants to eliminate evidence of their discriminatory decision-making process.

**ANSWER:**

Denied.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**COMPLAINT ¶61:**

The discriminatory practices and lack of integrity within Defendants' management created an intolerable work environment for Plaintiff. Despite his dedication and contributions to the company, he was repeatedly overlooked for advancement opportunities for which he was qualified.

**ANSWER:**

Denied.

**COMPLAINT ¶62:**

Plaintiff was undervalued by Defendants, despite being the top performer among CSS employees in his region and the only territory to achieve its performance plan. Defendants' treatment of Plaintiff made clear that his exceptional performance would not be rewarded with the advancement opportunities he deserved.

**ANSWER:**

Denied.

**COMPLAINT ¶63:**

Plaintiff was subjected to unfair treatment throughout his employment, including being denied promotions in favor of less qualified candidates and being denied equal pay for effectively performing TM-level work without the corresponding title or compensation.

**ANSWER:**

Denied.

**COMPLAINT ¶64:**

Defendants required Plaintiff to perform substantially the same work as employees in the TM position, including bringing in new business, training physicians, and serving as the technical expert during procedures. Plaintiff performed this work under similar working conditions as TM employees.

**ANSWER:**

Denied.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**COMPLAINT ¶65:**

Despite performing substantially similar work to TM employees, when viewed as a composite of skill, effort, and responsibility, Defendants paid Plaintiff at a significantly lower rate than it paid white and female employees who held TM positions. This constituted a violation of the California Equal Pay Act.

**ANSWER:**

Denied.

**COMPLAINT ¶66:**

The pay differential between Plaintiff's CSS position and the TM position was substantial. Plaintiff earned approximately $200,000 annually, while TM employees earned base salaries starting at $350,000 and total compensation that could exceed $600,000. This pay gap existed despite Plaintiff performing substantially similar work to TM employees.

**ANSWER:**

Denied.

**COMPLAINT ¶67:**

Defendants' discriminatory treatment of Plaintiff, including denying him promotions he was qualified for, failing to compensate him fairly for the work he performed, dismissing his complaints, and creating a hostile work environment, made his working conditions intolerable.

**ANSWER:**

Denied.

**COMPLAINT ¶68:**

The discriminatory practices and intolerable working conditions ultimately led to Plaintiff's constructive discharge. By November 2024, the work environment had become so intolerable due to the pervasive discrimination that Plaintiff was compelled to resign.

**ANSWER:**

Denied.

**COMPLAINT ¶69:**

A reasonable person in Plaintiff's position would have had no reasonable alternative except to resign given the intolerable working conditions created by Defendants' discriminatory practices. The denial of promotions, unequal pay, dismissive response to complaints, and deletion of records supporting his applications made it clear that Plaintiff had no future with Defendants despite his exceptional performance.

**ANSWER:**

Denied.

**COMPLAINT ¶70:**

Plaintiff was forced to resign from employment with Defendants in November 2024 because Defendants' knowing and intentional violations of the public policies set forth in the California Fair Employment and Housing Act and the California Labor Code made Plaintiff's working conditions so intolerable that he was compelled to resign.

**ANSWER:**

Admitted only that Plaintiff voluntarily resigned his employment with SJM effective November 6, 2024. Except as expressly admitted, denied.

**COMPLAINT ¶71:**

Economic damages: As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

**ANSWER:**

Denied.

**COMPLAINT ¶72:**

Non-economic damages: As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

**ANSWER:**

Denied.

**COMPLAINT ¶73:**

Punitive damages: Defendants' conduct, committed by officers and managing agents, constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitled Plaintiff to an award of exemplary and/or punitive damages.

**ANSWER:**

Denied.

**COMPLAINT ¶74:**

Malice: Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) Defendants acted with intent to cause injury to Plaintiff and/or acted with reckless disregard for Plaintiff's injury, including by denying Plaintiff promotions for which he was qualified, terminating Plaintiff's employment through constructive discharge, and/or taking other adverse job actions against Plaintiff because of his race and gender and/or (b) Defendants' conduct was despicable and committed in willful and conscious disregard of Plaintiff's rights, health, and safety, including Plaintiff's right to be free of discrimination based on race and gender.

**ANSWER:**

Denied.

**COMPLAINT ¶75:**

Oppression: In addition, and/or alternatively, Defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that Defendants' actions against Plaintiff because of his race and gender were "despicable" and subjected Plaintiff to cruel and unjust hardship, in knowing disregard of Plaintiff's rights to a workplace free of discrimination based on race and gender.

**ANSWER:**

Denied.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**COMPLAINT ¶76:**

Fraud: In addition, and/or alternatively, Defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that Defendants asserted false (pretextual) grounds for denying promotions to Plaintiff, including citing relationships with physicians that Plaintiff had already established and claiming that less qualified candidates were better suited for the positions, to cause Plaintiff hardship and deprive him of legal rights.

**ANSWER:**

Denied.

**COMPLAINT ¶77:**

The pretextual nature of Defendants' stated reasons for denying Plaintiff promotions, combined with the deletion of records related to his applications and the pattern of discriminatory hiring under Area VP Bayat's tenure, demonstrates that Defendants acted with fraud in denying Plaintiff the advancement opportunities he deserved.

**ANSWER:**

Denied.

**COMPLAINT ¶78:**

Attorney fees: Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

**ANSWER:**

Admitted that Plaintiff purports to seek attorneys' fees. Abbott denies that Plaintiff is entitled to any attorneys' fees, costs, or other relief.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Discrimination on the Basis of Race and Gender

### (Violation of the FEHA, Cal. Gov't Code § 12940(a))

### (Against All Defendants)

**COMPLAINT ¶79:**

Plaintiff incorporates by reference, and realleges as if fully stated herein, each and every allegation set forth above.

**ANSWER:**

Abbott incorporates by reference its responses to Paragraphs 1 through 78 above as though fully set forth herein.

**COMPLAINT ¶80:**

Plaintiff, an African-American male, was a member of a protected class within the meaning of the FEHA and is entitled to its guarantees of full and equal access to employment. *See* Cal. Gov't Code § 12926.1.

**ANSWER:**

Admitted that Plaintiff has identified himself as an African-American male. The remaining allegations of Paragraph 80 state legal conclusions to which no response is required; to the extent a response is required, denied.

**COMPLAINT ¶81:**

The FEHA provides that the opportunity to seek, obtain, and hold employment without discrimination because of, *inter alia*, race and gender is a civil right. *See* Cal. Gov't Code §§ 12921(a).

**ANSWER:**

The allegations of Paragraph 81 state legal conclusions to which no response is required; to the extent a response is required, denied.

**COMPLAINT ¶82:**

The purpose of the FEHA is to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on the account of, inter alia, a person's race and gender. The FEHA recognizes that the practice of denying employment opportunities and discriminating in terms of employment substantially and adversely affects the interest of employees, employers, and the public in general. *See* Cal. Gov't Code § 12920.

**ANSWER:**

The allegations of Paragraph 82 state legal conclusions to which no response is required; to the extent a response is required, denied.

**COMPLAINT ¶83:**

The FEHA makes it an unlawful employment practice for an employer to discriminate against an employee "in terms, conditions, or privileges of employment" on the basis of the employee's race and gender. Cal. Gov't Code § 12940(a).

**ANSWER:**

The allegations of Paragraph 83 state legal conclusions regarding the operative text of the FEHA, to which no response is required; to the extent a response is required, denied.

**COMPLAINT ¶84:**

Defendants subjected Plaintiff to unlawful discrimination by denying him promotion to the Territory Manager position on two separate occasions, despite his qualifications and exceptional performance, in favor of less qualified white and female applicants. Defendants also paid Plaintiff far less than white and female employees who performed substantially similar work.

**ANSWER:**

Denied.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**COMPLAINT ¶85:**

Plaintiff's race and gender were motivating factors in Defendants' decisions to take these adverse job actions against Plaintiff. Plaintiff's white and female colleagues were treated more favorably than Plaintiff, including being promoted to Territory Manager positions despite being less qualified. Thus, Defendants discriminated against Plaintiff, in whole or in part, on the basis of Plaintiff's race and gender, in violation of California Government Code section 12940(a).

**ANSWER:**

Denied.

**COMPLAINT ¶86:**

As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits, and has suffered and continues to suffer humiliation, damage to reputation, emotional distress, and physical and mental pain and anguish, causing damages in a sum according to proof.

**ANSWER:**

Denied.

**COMPLAINT ¶87:**

Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(c)(6), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**ANSWER:**

Denied. Abbott denies that Plaintiff is entitled to attorneys' fees or costs.

**COMPLAINT ¶88:**

Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

**ANSWER:**

Denied.

### SECOND CAUSE OF ACTION

**Failure to Prevent, Investigate, and Remedy Discrimination and/or Harassment**

**(Violation of the FEHA, Cal. Gov't Code § 12940(k))**

**(Against All Defendants)**

**COMPLAINT ¶89:**

Plaintiff incorporates by reference, and realleges as if fully stated herein, each and every allegation set forth above.

**ANSWER:**

Abbott incorporates by reference its responses to Paragraphs 1 through 88 above as though fully set forth herein.

**COMPLAINT ¶90:**

California law requires employers to "take all reasonable steps necessary to prevent" and correct wrongful behavior, including but not limited to, discriminatory and harassing behavior in the workplace. *See* Cal. Gov't Code §12940(k). This statute required Defendants to take all reasonable steps to prevent harassment and discrimination based on Plaintiff's race and gender.

**ANSWER:**

The allegations of Paragraph 90 state legal conclusions regarding the operative text of the FEHA, to which no response is required; to the extent a response is required, denied.

**COMPLAINT ¶91:**

Defendants failed to prevent discrimination on the basis of Plaintiff's race and gender.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**ANSWER:**

Denied.

**COMPLAINT ¶92:**

Although Defendants were aware of actions and comments to and about Plaintiff that constituted discrimination and/or harassment, they did not take immediate or corrective action to prevent further harassment or discrimination against Plaintiff.

**ANSWER:**

Denied.

**COMPLAINT ¶93:**

Defendants violated California law by failing to take all reasonable steps necessary to prevent the discrimination and harassment from occurring, as required by law. *See* Cal. Gov't. Code § 12940(k); *see also* Cal. Gov't Code § 12940(j). ("Harassment of an employee ... shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.").

**ANSWER:**

Denied.

**COMPLAINT ¶94:**

As a proximate result of Defendants' willful, knowing, and intentional failure to prevent, investigate or remedy discrimination and harassment against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

**ANSWER:**

Denied.

**COMPLAINT ¶95:**

As a proximate result of Defendants' willful, knowing, and intentional failure to prevent, investigate, or remedy discrimination and harassment against Plaintiff, Plaintiff

has suffered and continues to suffer humiliation, damage to reputation, emotional distress, and mental and physical pain and anguish, causing damage in a sum according to proof.

**ANSWER:**

Denied.

**COMPLAINT ¶96:**

Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(c)(6), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**ANSWER:**

Denied.

**COMPLAINT ¶97:**

Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

**ANSWER:**

Denied.

**THIRD CAUSE OF ACTION**

**Wrongful Termination/Constructive Discharge (Against All Defendants)**

**COMPLAINT ¶98:**

Plaintiff incorporates by reference, and realleges as if fully stated herein, each and every allegation set forth above.

**ANSWER:**

Abbott incorporates by reference its responses to Paragraphs 1 through 97 above as though fully set forth herein.

32

**COMPLAINT ¶99:**

Under California law, it is unlawful for an employer to terminate an employee in violation of a fundamental public policy of the United States of America and/or the State of California.

**ANSWER:**

The allegations of Paragraph 99 state legal conclusions to which no response is required; to the extent a response is required, denied.

**COMPLAINT ¶100:**

Defendants' knowing and intentional violations of the public policy protections set forth in the FEHA and the California Equal Pay Act, as alleged herein, made Plaintiff's working conditions so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign. Those intolerable working conditions did, in fact, compel Plaintiff to resign.

**ANSWER:**

Denied.

**COMPLAINT ¶101:**

As a proximate result of Defendants' willful, knowing, and intentional conduct, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits, and has suffered and continues to suffer humiliation, damage to reputation, emotional distress, and physical and mental pain and anguish, causing damage in a sum according to proof.

**ANSWER:**

Denied.

**COMPLAINT ¶102:**

Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

33

**ANSWER:**

Denied.

## FOURTH CAUSE OF ACTION

### Violation of Equal Pay Act (California Labor Code § 1197.5(a))

### (Against All Defendants)

**COMPLAINT ¶103:**

Plaintiff incorporates by reference, and realleges as if fully stated herein, each and every allegation set forth above.

**ANSWER:**

Abbott incorporates by reference its responses to Paragraphs 1 through 102 above as though fully set forth herein.

**COMPLAINT ¶104:**

At all relevant times, California Labor Code section 1197.5 was in effect and was binding on Defendants. This statute prohibits Defendants from paying any individual at a lower rate than employees of a different race and gender for substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

**ANSWER:**

The allegations of Paragraph 104 state legal conclusions regarding the operative text of California Labor Code section 1197.5, to which no response is required; to the extent a response is required, denied.

**COMPLAINT ¶105:**

Defendants violated California Labor Code section 1197.5 by failing to pay Plaintiff at the same rate as white and female employees for substantially similar Territory Manager work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

**ANSWER:**

Denied.

**COMPLAINT ¶106:**

As a proximate result of Defendants' willful, knowing, and intentional violation of Labor Code section 1197.5, Plaintiff sustained substantial losses of earnings and employment benefits. Plaintiff is entitled to the balance of the wages, including interest, and an equal amount as liquidated damages. *See* California Labor Code § 1197.5(h).

**ANSWER:**

Denied.

**COMPLAINT ¶107:**

Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Labor Code section 1197.5(h), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**ANSWER:**

Denied.

**COMPLAINT ¶108:**

Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

**ANSWER:**

Denied.

**PRAYER FOR RELIEF (¶¶ 109–123)**

Paragraphs 109 through 123 of the FAC consist of Plaintiff's Prayer for Relief, which sets forth the relief Plaintiff seeks rather than allegations to be admitted or denied. To the extent any response is required, Abbott denies that Plaintiff is entitled to any of the relief requested in the Prayer for Relief, or to any relief whatsoever.

**REQUEST FOR JURY TRIAL**

**COMPLAINT ¶124:**

Plaintiff hereby demands a trial by jury on all issues.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

**ANSWER:**

Paragraph 124 of the FAC consists of Plaintiff's request for a jury trial, to which no response is required. To the extent a response is required, Abbott denies that Plaintiff is entitled to a jury trial on any issue not so triable as of right.

<strong>AFFIRMATIVE DEFENSES</strong>

Without conceding that it bears the burden of proof or persuasion on any of the following defenses, and reserving the right to amend or supplement these defenses as discovery progresses, Abbott asserts the following separate and additional affirmative defenses to the FAC:

<strong>FIRST AFFIRMATIVE DEFENSE</strong><br><strong>(Failure to State a Claim)</strong>

The FAC, and each cause of action alleged therein, fails to state a claim upon which relief may be granted against Abbott.

<strong>SECOND AFFIRMATIVE DEFENSE</strong><br><strong>(Not Plaintiff's Employer)</strong>

Abbott was not Plaintiff's employer within the meaning of the FEHA (Cal. Gov't Code §§ 12926, 12940), the California Equal Pay Act (Cal. Lab. Code § 1197.5), or any other applicable statute or common law. Plaintiff's employer of record was SJM, as reflected on Plaintiff's W-2 forms, payroll records, offer letter, and Workday records. Abbott did not control Plaintiff's hiring, compensation, supervision, promotion, performance evaluation, or termination.

<strong>THIRD AFFIRMATIVE DEFENSE</strong><br><strong>(No Single Integrated Enterprise / No Joint Employer)</strong>

Abbott and SJM did not constitute a single integrated enterprise or joint employer with respect to Plaintiff's employment. Abbott and SJM are separate legal entities, with separate operations, separate management of labor relations, separate employment decisions, and separate personnel policies as to Plaintiff.

## FOURTH AFFIRMATIVE DEFENSE

### (No Alter Ego)

There was not, at any relevant time, a unity of interest and ownership between Abbott and SJM such that the separateness of those entities ceased. Adherence to the separate corporate form of Abbott and SJM would not sanction fraud or promote injustice.

## FIFTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Plaintiff's claims, and each of them, are barred, in whole or in part, by the applicable statutes of limitations, including without limitation Cal. Gov't Code §§ 12960 and 12965, Cal. Code Civ. Proc. § 335.1, and Cal. Lab. Code § 1197.5(h), as applicable. Without limitation, Plaintiff's June 12, 2026 amended administrative complaint adding SJM as a Respondent was untimely as to one or more of the challenged employment actions.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Administrative Remedies)

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff failed to timely exhaust the administrative remedies required by law, including Cal. Gov't Code §§ 12960 and 12965.

## SEVENTH AFFIRMATIVE DEFENSE

### (Allegations and Claims Outside Scope of Administrative Charge)

Plaintiff's claims are barred, in whole or in part, to the extent they assert allegations or claims outside the scope of any administrative charge Plaintiff filed with the California Civil Rights Department, including any allegations not encompassed in the original February 2, 2026 administrative complaint or the June 12, 2026 amended administrative complaint, and including any claims against Abbott to the extent not encompassed within any administrative charge naming Abbott.

## EIGHTH AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, and Laches)

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and laches.

## NINTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Plaintiff failed to mitigate the damages he allegedly suffered (which Abbott denies). Any recovery must be reduced by the amount Plaintiff earned, or with reasonable diligence could have earned, in substantially comparable employment following his voluntary resignation.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Offset / Set-Off)

Any recovery by Plaintiff must be reduced by any amounts Plaintiff received or could have received from other sources to the extent necessary to prevent double recovery, including any compensation, benefits, unemployment, or other amounts received by Plaintiff that relate to the period for which Plaintiff seeks damages.

## TWELFTH AFFIRMATIVE DEFENSE

### (Workers' Compensation Exclusivity)

To the extent Plaintiff seeks recovery for emotional distress or related injuries arising out of and in the course of his employment, such claims are barred by the exclusive remedy provisions of the California Workers' Compensation Act. Cal. Lab. Code §§ 3600 et seq.

38

## THIRTEENTH AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

Plaintiff's recovery, if any, is barred or limited by the after-acquired evidence doctrine to the extent Abbott or SJM has obtained or obtains evidence of misconduct by Plaintiff that would have resulted in Plaintiff's termination or other adverse employment action.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Legitimate, Non-Discriminatory Reasons)

Any employment-related decisions affecting Plaintiff, including but not limited to decisions regarding compensation, performance management, promotion, and the selection of other candidates for Territory Manager positions, were made for legitimate, non-discriminatory, and non-retaliatory business reasons based on job-related qualifications and bona fide factors other than race, gender, or any other protected characteristic.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Business Judgment)

Plaintiff's claims are barred, in whole or in part, because any promotion, compensation, hiring, or other employment decisions involving Plaintiff were based on Abbott's and/or SJM's lawful business judgment, including their assessment of candidates' qualifications, experience, performance, fit for the role, and business needs, and not on any unlawful discriminatory motive.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Same Decision / Mixed Motive)

Even if Plaintiff's race or gender were a motivating factor in any challenged employment decision (which is denied), the same decision would have been made for legitimate, non-discriminatory reasons in the absence of any such factor. Plaintiff therefore is barred from recovering certain remedies, including damages, back pay, front pay, and reinstatement, to the extent permitted by law.

39

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No Constructive Discharge)

Plaintiff was not constructively discharged. Plaintiff voluntarily resigned his employment with SJM to pursue another career opportunity. The conditions of Plaintiff's employment were not so intolerable, extraordinary, or egregious that a reasonable person in Plaintiff's position would have felt compelled to resign.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (No Equal Pay Violation — Bona Fide Factors Other Than Sex / Race)

Any differential in compensation between Plaintiff and any employees in the Territory Manager role (which Abbott denies establishes a violation of Cal. Lab. Code § 1197.5) was based on one or more bona fide factors other than sex or race, including, without limitation, a merit system, a system that measures earnings by quantity or quality of production, differences in job qualifications and experience, differences in the nature and scope of the work performed, and other legitimate business-related factors that were job-related and consistent with business necessity. Cal. Lab. Code § 1197.5(a)(1)(D), (b)(1)(D).

## NINETEENTH AFFIRMATIVE DEFENSE

### (No Substantially Similar Work)

Plaintiff did not perform "substantially similar work" to that of Territory Managers, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions, within the meaning of Cal. Lab. Code § 1197.5(a) and (b). The CSS and Territory Manager roles differ materially in scope of responsibility, account ownership, business planning, leadership, compensation structure, and other respects.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Avoidable Consequences / Failure to Use Corrective Mechanisms)

Plaintiff's claims are barred, in whole or in part, or any recovery sought by Plaintiff must be reduced, because Abbott and/or SJM maintained reasonable policies,

reporting avenues, and corrective procedures, and Plaintiff failed to make reasonable use of available opportunities to report, avoid, correct, or otherwise minimize the alleged harm.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Prompt and Reasonable Remedial Action)

Abbott and/or SJM exercised reasonable care to prevent and, as appropriate, promptly correct alleged discrimination, harassment, and other unlawful conduct, including through written policies, reporting mechanisms, training, and corrective procedures consistent with applicable law.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (No Causation)

Plaintiff cannot establish that any alleged adverse action, compensation decision, or other challenged conduct was caused by any protected characteristic or unlawful motive. Any damages Plaintiff allegedly sustained (which Abbott denies) were caused, in whole or in part, by Plaintiff's own conduct or by the conduct of third parties for whom Abbott bears no legal responsibility, and were not proximately caused by any act or omission of Abbott.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Adverse Employment Action)

Plaintiff's claims are barred, in whole or in part, because Plaintiff did not suffer an actionable adverse employment action by Abbott Laboratories.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (No Disparate Treatment / No Similarly Situated Comparator)

Plaintiff's claims are barred, in whole or in part, because Plaintiff cannot show that similarly situated employees outside his protected group were treated more favorably under materially similar circumstances.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (At-Will Employment)

At all relevant times, Plaintiff was an at-will employee.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Public Policy Claim Subsumed)

To the extent Plaintiff's Third Cause of Action for wrongful termination / constructive discharge in violation of public policy is duplicative of his statutory FEHA and Equal Pay Act claims, the common law claim is subsumed and unavailable as a separate avenue of recovery.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Punitive Damages Barred— No Officer / Director / Managing Agent; Good-Faith Policies)

Plaintiff is not entitled to punitive damages because (a) no conduct alleged in the FAC constitutes oppression, fraud, or malice within the meaning of Cal. Civ. Code § 3294; (b) no such conduct was engaged in, authorized, or ratified by an officer, director, or managing agent of Abbott acting on Abbott's behalf, Cal. Civ. Code § 3294(b); and (c) Plaintiff may not recover punitive damages against Abbott for purportedly wrongful actions by its employees or agents to the extent those decisions were contrary to Abbott's policies that were instituted in good faith.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Unconstitutional Punitive Damages)

Any award of punitive damages would violate Abbott's rights under the United States and California Constitutions, including due process. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 2:26-CV-02998-JLS-AS

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Privilege)

To the extent Plaintiff bases any of his claims on statements made by Abbott or its agents, those statements are privileged under Cal. Civ. Code § 47.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Failure to Plead Fraud with Particularity)

Plaintiff's allegations of fraud, including without limitation his allegations in Paragraphs 76 and 77 of the FAC and his related claim for punitive damages premised on "fraud" within the meaning of California Civil Code section 3294, are barred, in whole or in part, because Plaintiff has failed to plead such allegations with the particularity required by Federal Rule of Civil Procedure 9(b). Plaintiff has not pleaded with specificity the who, what, when, where, and how of any alleged misrepresentation, the speaker, the time and place of any allegedly false statement, the content of the statement, or the manner in which it was false or misleading.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Honest Belief / Good Faith)

Plaintiff's claims are barred, in whole or in part, because all employment decisions concerning Plaintiff, including without limitation the decisions not to select Plaintiff for the Territory Manager positions for which he applied, were made by decision-makers who held an honest, good-faith belief in the legitimate, non-discriminatory, and non-retaliatory reasons for those decisions at the time they were made, based on the information reasonably available to them. Any such decision cannot give rise to liability under the FEHA, the California Equal Pay Act, or California common law even if Plaintiff later disputes the factual basis for the decision.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Speculative and Uncertain Damages)

Plaintiff's claimed damages are barred, in whole or in part, because they are speculative, remote, uncertain, and not susceptible to reasonable calculation. Without

limitation, Plaintiff's claims for lost earnings, lost employment benefits, front pay, and any damages premised on his alleged failure to be promoted to a Territory Manager position are speculative and unrecoverable because Plaintiff cannot establish with reasonable certainty that he would have been selected for such a position, the duration he would have remained in such a position, or the compensation he would have earned in such a position.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Reservation of Rights)

Abbott has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to assert and rely on such other applicable affirmative defenses as may become available or apparent during discovery. Abbott reserves the right to amend or supplement this Answer to assert additional defenses or to delete or otherwise modify any defenses asserted herein.

## PRAYER

WHEREFORE, Abbott prays for judgment as follows:

1.    That Plaintiff take nothing by reason of the First Amended Complaint;

2.    That the First Amended Complaint be dismissed with prejudice as to Abbott;

3.    That judgment be entered in favor of Abbott;

4.    That Abbott be awarded its costs of suit, including reasonable attorneys' fees, to the extent permitted by applicable law; and

5.    For such other and further relief as the Court deems just and proper.

DATED: July 8, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By: _/s/Michele J. Beilke_
Michele J. Beilke
Julia Y. Trankiem
Sage E. Fishelman
Wei Kit (Ricky) Tai
Attorneys for Defendant
ABBOTT LABORATORIES

44